Date signed February 28, 2013



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MARYLAND
### Greenbelt Division

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| FERDINAND W. MAGELLANES | : | Case No. 12-13392-PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| ERIC WHITE | : | |
| ANGELA WHITE | : | |
| Plaintiffs | : | |
| vs. | : | Adversary No. 12-0380-PM |
| | : | |
| FERDINAND W. MAGELLANES | : | |
| | : | |
| Defendant | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

This case came before the court on February 13, 2013, for trial on the adversary proceeding filed by Eric White and Angela White seeking a ruling that the balance of $19,443.27 owed on a prepetition judgment in the original amount of $30,000.00, entered in the District Court of Maryland for Calvert County in the case of *Eric White and Angela White vs. Ferdinand Magallanes*, Case No. 0401-0002614-2009, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) that provides:

§ 523 Exceptions to discharge.

(a)  A discharge under section 727, 1141, 1228  (a), 1228  (b), or 1328  (b)

>of this title does not discharge an individual debtor from any debt—
>>(2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>>>(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .

The Complaint was filed in two counts.  Plaintiffs abandoned Count II brought on grounds of an alleged willful and malicious injury under 11 U.S.C. § 523(a)(6).  The charging paragraphs of the remaining Count I allege:

>13. Section 523(a)(2)(A) of the Code provides that a debt is not discharged "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."
>
>14. The Contract was a false pretense, false representation and actual fraud in that the Defendant at the time he received monies from Plaintiffs was not a licensed MHIC home improvement contractor, nor did he have the financial stability to perform the project that he agreed to complete so as to pay his subcontractors and laborers.
>
>15. These actions were misrepresentations by the Defendant, upon which the Plaintiffs justifiably relied in signing the Contract and performing their obligations to make payments to the Defendant under the Contract.
>
>16. The Plaintiffs were damaged in that the Defendant received Plaintiffs' monies and failed to perform the work or failed to perform the work to the standard required of a licensed MHIC home improvement contractor.

For the most part, the relevant facts of this case are not in dispute.  The parties entered into a home improvement contract (the "Contract") that was dated October 19, 2008, primarily for addition of a master bedroom and master bath and for a garage addition to Plaintiffs' house (Plaintiffs' Ex. 1).  The total price of the work pursuant to the Contract was $72,000.00.   In an effort to keep costs down, there were numerous exclusions from the scope of work such as painting, paving and concrete work.  The only fact witnesses were the Plaintiff Angela White, who was the point person for the Whites in this relationship, and Defendant.  No evidence was offered as to the alleged "standard required of a licensed MHIC home improvement contractor,"

if such exists.[1] Nor was any evidence offered on the role that the Guaranty Fund played in this case.[2] For the most part the facts of this controversy are not in dispute, but one critical fact was the subject of conflicting testimony. While the Complaint pleads at paragraph 5 that the Contract was entered into on or about October 19, 2008, as the Contract was dated, and Defendant's answer admits the truth of this allegation, Angela White testified at trial that the actual signing was on February 19, 2009, the date that she delivered the first draw check to Defendant. Defendant testified that the signing date was as stated on the document, October 19, 2008, that he specifically recalled said date, and that there was a reference to the event on that date in his 'DayTimer.' There was no evidence presented that Eric White was present and signed the Contract when Angela White delivered the first draw check. The court finds as a fact that the Contract was signed on the earlier date, October 19, 2008. This finding is critical because while Defendant failed to renew his MHIC license before it expired on February 6, 2009, he held a valid license as of October 19, 2008.

      Plaintiffs and Defendant and his wife were close friends prior to the events leading up to this legal action. Their daughters were in the same ballet class. Defendant's wife and Angela White cleaned houses together. The parties discussed the project for several months and finally entered into the Contract at a price within Plaintiffs' budget. This was accomplished by reusing some materials and limiting the scope of work as described above. But the sad truth of this situation was that Defendant was inexperienced in the role of a general contractor. While he thought he would be able to fund the project through the draws and by use of his credit cards, his estimates were woefully inadequate. He might have been an experienced carpentry subcontractor, but this project was beyond him. He appears to have done the best he could, but these efforts were not enough. He ran out of money and could not finish the job, although the work he completed passed inspection. With the clarity of hindsight, he should not have

---

[1] "MHIC" refers to the Maryland Home Improvement Commission, a governmental body established pursuant to MD. CODE ANN., BUS. REG. §8-201 (2012) that licenses and regulates home improvement contractors, subcontractors and salespersons. MHIC also administers a Guaranty Fund established pursuant to MD. CODE ANN., BUS. REG.§8-403 (2012) that compensates homeowners for actual monetary losses that result from an act or omission of a licensed contractor.

[2] If fraud were proven, even if Defendant proved that the Fund would reimburse Plaintiffs in full for their loss, the court would not in that situation absolve him and have the Fund absorb the loss for his fraudulent conduct.

undertaken this work.  In time, because of the delays and the state of the work, Plaintiffs had had enough and terminated Defendant's services.  The state court law suit followed.

As noted above, between the time that the Contract was signed and work commenced, Defendant lost his MHIC license. In commencing and performing the work when he was unlicensed, Defendant violated MD. CODE ANN. Bus. Reg. §8-601(a) (2012), providing that "a person may not act or offer to act as a contractor in the State unless the person has a contractor license."  A person who violates this provision is guilty of a misdemeanor punishable by a fine up to $1,000.00 and imprisonment up to six months for a first offense.[3]

"When considering the applicability of an exception to discharge, we construe the exception narrowly 'to protect the purpose of providing debtors a fresh start.' " *Nunnery v. Rountree*, 478 F.3d 215, 219 (CA4 2007).  While exceptions to discharge are narrowly interpreted to protect the purpose of providing debtors a fresh start, it is equally important to ensure that "perpetrators of fraud are not allowed to hide behind the skirts of the Bankruptcy Code." *In re Biondo*, 180 F.3d 126, 130 (4th Cir. 1999).   The burden of proof is on the creditor to establish by a preponderance of the evidence that its debt is entitled to nondischargeability. *Kubota Tractor Corp. v. Strack*, 524 F.3d 493, 497 (CA4 2008); *Grogan v. Garner*, 498 U.S. 279, 291 (1991).  As explained in *Nunnery  v. Rountree*, *supra* at 218,  a creditor's proof of "actual fraud" under § 523(a)(2)(A) requires satisfaction of the elements of common law fraud: "(1) false representation, (2) knowledge that the representation was false, (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages."  Here, at the time the Contract was signed, Defendant was fully licensed.  His representation was correct, and the proximate cause of damages was not the failure to be licensed, but his ineptitude in carrying out his obligations.  There was no false representation made, and the court finds no intent to deceive on Defendant's part during the term of the relationship.  There was no evidence of misuse or diversion of funds.  Even were the court to find a misrepresentation of Defendant's licensure by omission of its status after it expired on February 6, 2009, the parties were already under contract by that time, Plaintiffs' loss cannot be said to have been proximately caused by such misrepresentation, and thus it cannot be deemed a claim for money obtained by fraud.  *See In re Melcher*, 319 B.R.761, 773-774 (BC D.C. 2004).  There is no causal connection between

---

[3]At the time the Contract was made, the statute provided for 30 days' imprisonment on a first offense.

the expiry of the license and the losses sustained by Plaintiffs. Accordingly, Plaintiffs have failed to satisfy the elements of proof required for the conclusion that Defendant's debt to Plaintiffs is nondischargeable pursuant to §523(a)(2)(A).

An order will be entered in accordance with the foregoing.

cc:
John D. Burns, Esq., 6303 Ivy Lane, Suite 102, Greenbelt, MD 20770
Christopher R. Wampler, Esq., 10605 Concord Street, Suite 206, Kensington, MD 20895

**END OF MEMORANDUM**